Egan v. Faendel.

## John Egan

*vs.*

## Henry Faendel.

The rule that the verdict of a jury will not be disturbed in this court where there is any evidence reasonably tending to sustain it, and should be held conclusive where there is conflicting evidence, unless most manifestly and palpably against the weight of evidence, applies with peculiar force to a case in which a motion for a new trial, on the ground that the verdict was not justified by the evidence, was denied after argument in the court below. In such a case, it would require a very extraordinary state of things to justify an appellate court in setting the verdict aside as against the weight of evidence.

Upon an issue as to what a bargain really was, the meaning, effect and true interpretation of what either party to the bargain *did*, are as much questions of fact, and for the jury, as of what either party *said* on the occasion.

Plaintiff alleged that defendant agreed to furnish him all the ice he might require and need in his business during the year. Plaintiff testified that he asked defendent how much he would charge him for ice for his business. "I showed him two boxes. He looked at his books and found that the ice supplied me the season before was $38, and then said 'I'll let you have what you want to use in your business for $40.'" *Held*, that it is impossible to pronounce as a matter of law upon this evidence, considered as it must be with reference to all the other circumstances of the case bearing upon it, as to what the bargain really was, and that the act of showing the boxes could not render a verdict in accordance with the allegation of the plaintiff, one manifestly and palpably against the weight of the evidence in the case.

The court having already fully instructed the jury as to the case in which, and in respect of what matters the plaintiff would be entitled to

Egan v. Faendel.

recover, if the jury found the contract with him, and that it had been broken by the defendant, further instructed them, at plaintiff's request, that if they found that plaintiff requested defendant to deliver more ice, during the warmer months, than he had required during the preceding and cooler months, under said contract, it would not invalidate the contract, nor relieve the defendant from damages which plaintiff suffered by the refusal of the defendant to furnish the agreed quantity of ice; that the fact that the plaintiff required more ice in his business in said warmer months, and requested defendant to furnish him a greater quantity of ice therein, than he had furnished during the preceding months, would not release the defendant from the contract, or from damages sustained by plaintiff by reason of the refusal of the defendant to furnish ice under it, unless the defendant was willing to furnish the amount required by the contract, and plaintiff refused to receive it. *Held*, that this instruction must be read in connection with that already given, and so read, was not calculated to mislead the jury, as assuming that defendant was liable for damages. For the same reason an instruction, also given at plaintiff's request, that plaintiff is entitled to recover in damages whatever loss or injury he has sustained in his business by reason of the refusal of the defendant to fulfill his said contract, was not calculated to mislead the jury into a belief that plaintiff could receive more than the legal damages proved.

An appeal is taken in this case by the defendant from an order of the district court for Ramsey county, denying his motion for a new trial. A sufficient statement of the case appears in the opinion of the court.

, GEORGE L. OTIS, for Appellant.

S. M. FLINT, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The plaintiff alleges that the defendant agreed to furnish him all the ice he might require and need to use in his business for and during the year 1870 ; the defendant on the other hand alleges that he only agreed to furnish the ice required for certain ice boxes of the plaintiff.

Egan v. Faendel.

No third person was present at the making of the bargain, and as to what it really was, the testimony of the parties was conflicting, to say the least of it. The jury having found this issue for the plaintiff, and returned a verdict in his favor, and defendant's motion for a new trial upon the ground, among others, that the said verdict was not justified by the evidence, having been denied by the district court, he appeals to this court.

To such a case the rule that the verdict of a jury will not be disturbed in this court where there is any evidence reasonably tending to sustain it, and should be held conclusive where there is conflicting evidence, unless most manifestly and palpably against the weight of evidence, ( 12 *Minn.* 298), applies with peculiar force. For not only have the jury passed upon the question, but the judge before whom the case was tried, and who had the advantage, which we have not, of witnessing the appearance and conduct of the witnesses upon the stand, and is, therefore, like the jury, better able to judge of the weight to be given to their testimony, has refused after argument to set the verdict aside. It must therefore be " a very extraordinary state of things " which would warrant us in setting aside the finding of this jury as against the weight of the evidence, a different state of things from that here presented.

In characterizing the testimony of the parties as conflicting, it is moreover implied, that defendant's position, that there is *no* evidence in this case to sustain the plaintiff's theory of the contract, is untenable.

The plaintiff testified that he asked the defendant how much he would charge him for ice for his business. " I showed him two boxes. He looked at his books and found that the ice supplied me the season before was $38, and then said : 'I'll let you have what you want to use in your business for $40.'

I showed him two boxes, and said I wanted what ice I wanted for my business, and he said he would furnish it for $40." "The contract was to furnish what ice I needed for my business."

The defendant contends that the last statement " is but plaintiff's construction as to what the contract was, of what actually took place." Whether in point of fact, it is nothing more, those who were not present at the trial are in no position to form a reliable opinion, and this weight against the adoption by an appellate court of the defendant's proposition, aforesaid, that there is here *no* evidence to sustain plaintiff's theory.

If, however, the point as to this particular piece of testimony be conceded to the defendant, he next insists, that the act of the plaintiff in showing the boxes, aforesaid, was a part of the contract, qualifying and limiting the language of the parties. In his view, this act so qualifies and limits it, as to make the question of the plaintiff as to how much the defendant would charge him for ice for his business, a question as to how much he would charge him to furnish the requisite supply of ice for those, or similar boxes, the same as he did last year; and the defendant's reply, that he would let him have what he wanted to use in his business for forty dollars (being what he actually said,) a statement, in reality, that he would furnish the requisite supply of ice for these, or similar boxes, the same as he did last year for forty dollars.

He contends, moreover, that this is the legal effect of what was said and done, and that, therefore, the court erred in submitting to the jury the question as to what the contract was.

With respect to this last suggestion, however, it is only necessary to point out that the meaning, effect and true interpretation of what either party *did*, were as much questions of

Egan v. Faendel.

fact, as the meaning, effect and true interpretation of what they *said* on the occasion, and for the jury.

It is impossible to pronounce, as *matter of law*, upon this testimony, considered as it must be in connection with all the other circumstances of the case in evidence, and bearing upon it, as to what the bargain really was. It was for the jury to weigh the words and acts of the parties.

Proof of the direct and positive promise of the defendant to furnish what ice plaintiff needed in his business, was certainly evidence reasonably tending to prove that he did so undertake, whether or not the plaintiff should need more than would be necessary to fill the said boxes; and the fact that the boxes were shown, would as certainly not make such a finding manifestly and palpably against the weight of evidence.

There is nothing to show, for instance, that it was not *then* a part of plaintiff's business to supply meat at wholesale on the line of the railroad, perhaps requiring ice to be sent with it during part of the summer. The defendant assumes that he knew the plaintiff's mode of doing business. In that case, he must have known if the fact were so, that this part of plaintiff's business might need more ice than the quantity which those boxes would *per se* consume.

It appears to us, that it would be entirely unreasonable to say, that the act of showing the boxes *must* be held to convert the defendant's plain and positive promise, aforesaid, into a promise to supply so much ice as two boxes of a certain size would consume.

Whether in view of such act the defendant *meant* his words to be understood in a different sense from their natural one, and whether they *were* so understood or not, was something most peculiarly for the jury to settle, and the evidence furnishes us with no basis for revising it.

As the defendant's statement of what took place, is entirely

irreconcilable with the plaintiff's testimony, we assume that the jury took the latter as the correct statement of the matter. The defendant's account of it, therefore, does not affect or enter into the question of the weight of evidence on this point.

A witness for plaintiff testified that a good many barrels and quarters of beef were spoiled on the railroad by reason of not having ice. "Worth about $20 per barrel. Quarters weigh 150 to 225 pounds and worth $9 per 100 pounds: average price per quarter $16. Besides good meat we were throwing away every day, we lost 7 barrels of beef and 8 to 10 quarters of beef. This was exclusive of meats we were serving to customers."

The court, in its instructions upon the subject of damages, stated, that as to the amount and value of meats spoiled "the young man who was in plaintiff's employ testifies that about 7 barrels of beef were spoiled, which was worth $20 per barrel, and that from 8 to 10 quarters also were spoiled, which were worth $16 a quarter."

The defendant contends that the court erred herein, because, as he says, this meat was lost by sending it out on the Superior railroad, and "there is no pretence that defendant was bound to furnish ice for use on the cars, in transporting meat by the barrel, or quarter. The jury must have inferred from the charge, that these were proper items of damage, when in fact, they were not." Assuming that the young man referred to beef spoiled on the road, it is also an assumption that *this* beef required ice to be sent with it. For ought that appears it would have kept till sent out and sold on the line if the plaintiff could have had ice in his shop, with which to keep it cold until sent.

But assuming that this meat might have required ice to be sent with it, the evidence is direct that plaintiff's business was the sale of meat by wholesale, as well as at retail; that he sent

out 67 head a month on the railroad for sale in barrels and quarters, and, as before remarked, there is nothing whatever to show that he was not sending out meat in the same way at the time the bargain was made, in which case, it would certainly fall within " the business ". for which defendant was to supply ice.

The court, at plaintiffs request, also instructed the jury: "That if they found that plaintiff requested defendant to deliver more ice during the warmer months than he had required during the preceding and cooler months under said contract, [meaning, as we understand it, the contract as plaintiff claimed it,] it would not invalidate the contract or relieve the defendant from damages which the plaintiff suffered by the refusal of the defendant to furnish the agreed quantity of ice.

"That the fact that the plaintiff required more ice in his business in the months of July and August, and requested the defendant to furnish him a greater quantity during such warmer months than he had furnished during the preceding months, would not release the defendant from the contract, or from damages sustained by plaintiff, by reason of the refusal of the defendant to furnish ice under it, unless the defendant was willing to furnish the amount required by the contract, and the plaintiff refused to receive it." These, the defendant says, were not applicable to the case. However that may be, they are certainly unobjectionable as abstract propositions.

But the defendant further objects, that they were calculated to mislead the jury, because they assumed that defendant was liable for damages. We think that this objection is not well founded. The instructions must be read in connection with the rest of the charge. The court had already fully instructed the jury as to the case in which, and in respect of what matters, the plaintiff would be entitled to recover, if the

jury found the contract with him, and that it had been broken by the defendant. The instructions excepted to would naturally be understood, as they were, we think, intended, to refer to the case already, thus explained, as that in which plaintiff would be entitled to recover such damages.

The next instruction given at plaintiff's request makes this entirely clear, viz.: "That plaintiff is entitled to recover in damages, whatever loss or injury he has sustained in his business by reason of the refusal of the defendant to fulfill his said contract."

To this, also, however, it is objected that it states the rule too broadly, and was calculated to mislead the jury, because plaintiff could only recover the legal damages proved.

He was certainly entitled to recover for all the loss or injury he proved himself to have sustained in his business, and the jury were likely to fall into no error by reason of any generality of this instruction, since, as already remarked, the court had already fully instructed them in this respect. It would naturally be intended that he had sustained no other loss than that which he proved himself to have sustained. Abstractly considered, the defendant was certainly liable to plaintiff for any loss or injury sustained in his business by reason of defendant's refusal to fulfill his contract. If he apprehended that the generality of the instruction would mislead the jury, he might have asked for a more specific one.

Order appealed from affirmed.