SARAH L. DRYDEN, *as Administratrix of the estate of James E. Dryden, deceased*, v. THE CHICAGO, KANSAS & NEBRASKA RAILWAY COMPANY.

NEW TRIAL — *Motions Overruled — No Review, When.* When errors complained of relate to matters occurring on the trial, for which a new trial is asked, but the action of the court in overruling the motion for a new trial is not assigned as error, they cannot be considered in this court. (*Struthers v. Fuller*, 45 Kas. 735, cited and followed.)

*Error from Doniphan District Court.*

THE facts sufficiently appear in the opinion.

*Grant W. Harrington*, and *W. D. Webb*, for plaintiff in error.

*M. A. Low*, and *W. F. Evans*, for defendant in error.

Opinion by SIMPSON, C.: On the 22d day of December, 1886, one James E. Dryden, who lived about three miles east of the city of Troy, in Doniphan county, was driving east from his home, early in the forenoon of a cold, frosty day, in a buggy drawn by two horses, and in attempting to cross the track of the Chicago, Kansas & Nebraska Railway Company, in advance of an approaching train, was killed. He had lived

near the crossing for many years, and the railroad had been in operation for several weeks. The top of his buggy was up, and he was driving in a brisk trot. The railroad extends east and west at the crossing. The wagon road, on which the deceased was traveling, ran north and south at this place, and crossed the railroad track at right angles, but before approaching the crossing from the north, and at a short distance therefrom, the road ran west, parallel with and about 100 feet north of the railroad track for several miles. The public road, after crossing the track of the railroad from the north, ran south for about 400 feet, and then turned and extended to the east. The deceased was driving along the road from the west until he came to the turn, and then went south for about 100 feet onto the track where he was killed. The railroad track for a distance of 50 or 60 feet west of the crossing was constructed upon a very light grade, but about 300 feet west of the crossing there was a cut from 2 to 11 feet deep, and probably 200 feet long, and west of this, and about 1,300 feet from the crossing, was a bridge 54 feet long. As the crossing is approached from the west, and before the road turns south, the ground is high and hilly, and the approaching train could be plainly seen from the top of the hill for 120 rods. As the crossing is approached from the west, and before the turn is made to the south, the ground between the road and track is comparatively level; when the turn is made on the road going south to the crossing the grade is slightly down hill until near the crossing; and to the west of the road, after the turn south is made, the view of the track west is somewhat obscured by weeds and elder bushes along the side of the fence and on the right-of-way. Dryden approached probably within 40 feet of the track at the crossing, when he leaned forward and looked in the direction of the approaching train. He then struck his horses with the whip and endeavored to cross the track before the train arrived at the crossing. He was struck by the train and killed. There is evidence tending strongly to show that while the train was in the cut west of the crossing, and probably 150 feet away, the whistle sounded the usual danger

signals. A fair summing up of the evidence shows that the deceased was driving along the road from the west at a brisk trot, and not until he turned south toward the crossing, and had advanced to within 40 or 50 feet of the track, did he pay any attention to the approaching train. At the latter point, something caused him to lean forward and look in the direction it was coming. He then whipped his horses, increased their speed, and tried to cross in advance of the arrival of the train. He lived within a half-mile of the crossing, his house being within 160 feet of the track of the railroad. The train that struck him was a regular train and on time.

This action was brought by his wife, as administratrix, to recover damages for the negligent killing at a public crossing. At the trial the court instructed the jury in these words:

"It is deemed by the court that the evidence in this case shows that the deceased, James E. Dryden, did not use ordinary care in crossing the railroad of defendant, and under the law is not entitled to a verdict for the injury done. You are, therefore, instructed to find for the defendant."

The jury returned a verdict for the defendant, and the administratrix brings the case here for review. The principal error complained of is the instruction above given; but as this is error of law occurring at the trial, and as the overruling of the motion for a new trial is not assigned as error in the petition in error filed in this court, we are without the power to review this cause. This has been held in many cases, from *Carson v. Funk*, 27 Kas. 524, to *Struthers v. Fuller*, 45 id. 735. Every assignment of error in the petition in this case is for errors occurring at the trial, and this ruling we now make on the instruction complained of applies to all the other assignments of error.

We can do nothing but recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.